IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

EARNEST BEAMON                                                              PLAINTIFF

VS.                                                          CIVIL ACTION NO. 3:07cv208-TSL-JCS

MICHAEL J. ASTRUE, COMMISSIONER                                             DEFENDANT
SOCIAL SECURITY ADMINISTRATION

_____

REPORT AND RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE

This cause is before the undersigned United States Magistrate Judge for a Report and Recommendation regarding the appeal by Earnest Beamon of the Commissioner of Social Security's final decision denying Beamon's application for a period of disability and Disability Insurance Benefits (DIB). In rendering this recommendation regarding Beamon's appeal, the Court has carefully reviewed the administrative record regarding Beamon's claims [including the administrative decision, the medical records and a transcript of the hearing before the Administrative Law Judge ["ALJ"]]; the Plaintiff's Motion for Summary Judgment and accompanying brief, as well as the Defendant's Motion for an Order Affirming the Decision of the Commissioner and accompanying brief. For the reasons discussed in this Report and Recommendation, the undersigned recommends that the Plaintiff's Motion for Summary Judgment (docket entry number 8) be granted, and that the Defendant's Motion to Affirm the Decision (docket entry number 12) be denied.

## I. FACTS

At the age of fifty-four, Beamon applied for Supplemental Security Income (SSI) disability benefits and for Social Security disability insurance benefits (DIB) in October 2002, with an alleged onset date of August 15, 2002. The claim was initially denied and was denied upon reconsideration in October 2003. Plaintiff requested and received an administrative hearing. Following the November 2004 hearing, in which the Plaintiff appeared *pro se*, without the benefit of counsel, the administrative law judge (ALJ) issued a decision which denied benefits. In his decision, the ALJ found that the Plaintiff has the medically determined residuals of a transient ischemic attack, or a stroke. Tr. at 29. Although this impairment is considered to be "severe" under the Regulations, the ALJ found that the medical evidence did not show that the Plaintiff has an impairment or combination of impairments under the Listings of Impairments. Id. Although the ALJ acknowledged that the Plaintiff also alleged disability due to arthritis in his knee, the ALJ determined that the Plaintiff's medications provided pain relief and that the Plaintiff's knee was improving. Id. Therefore, the ALJ concluded that this condition was not severe and affected the Plaintiff's work ability only mildly. Id. Based on Plaintiff's mental residual functional capacity, the ALJ determined that the Plaintiff could not perform his past relevant work as a supervisor in a papermill. Id. The ALJ also found that the Plaintiff had no transferable work skills because of memory and concentration problems, which the ALJ attributed to the Plaintiff's stroke. Id. at 32. Employing vocational expert testimony, the ALJ found that although the Plaintiff could not perform a full range of medium work, and using Rules 203.19 and 203.12 as a framework for decisionmaking, there existed a significant number of jobs in the economy that the claimant could perform. Thus, the ALJ concluded that the

Plaintiff was not disabled through the date of the decision, February 24, 2005.

Beamon, born in October 13, 1947, Tr. at 71, was fifty-four years old at the time of his alleged onset date, and was fifty-seven years old at the time the ALJ rendered his decision. Beamon has a tenth grade education and never obtained a G.E.D. Tr. at 263. He served in the U.S. Army for two years, spending one year in combat in Vietnam. Tr. at 71, 216, 271. After his honorable discharge from the Army in 1970, Plaintiff worked continuously for the next thirty-one years, earning every quarter of coverage for Social Security Benefits during that time. Tr. 74. During this time period, he also worked continuously for over twenty-five years for International Paper Company at a local lumber mill, until it closed in early 2002. Tr. 86; 264-265; 267. His last position with International Paper Company was a lumber mill production supervisor, monitoring production and supervising twenty to thirty workers. Tr. 265.

In August 2002, Beamon suffered a stroke and was hospitalized. Tr. 135-136. Plaintiff has a history of high blood pressure. Tr. 184. Although he seemed to recover from stroke-induced initial right-sided paresis, he continued to have residual memory and speech difficulties. Tr. 150. An MRI scan taken during his hospital admission showed evidence of a prior stroke and an acute stroke in the same area of the brain. Tr. 136. During his hospitalization following his stroke, the doctors found an anterior mediastinal mass in his chest. Tr. 138; 268. Plaintiff was subsequently readmitted on September 17, 2002, for surgical removal of the mass and was hospitalized for a total of fourteen days. Tr. 153; 268. Pathology notes described the mass as a "cyst of thymic origin" and did not indicate that it was malignant. Tr. 160. The surgical procedure required that Plaintiff's chest be opened in much the same manner as required for heart surgery.

As to other physical impairments, the limited medical records indicate that the plaintiff suffers from an enlarged heart, Tr. 271-272, and has chronic osteoarthritis, with accompanying pain, in both knees. A cardiology history dated August 15, 2002, performed in advance of the surgery described above, indicated that he had no cardiac symptoms and a "normal stress Thallium scan." Tr. 185. The Plaintiff, however, testified at his hearing in November 2004 that he has an enlarged heart. In his hearing testimony, the Plaintiff stated that medical tests performed two or three months prior to the hearing confirmed this condition, but the transcript is devoid of medical records addressing the issue or substantiating this condition.

The cardiology history of August 2002 confirms the existence of right knee pain attributed to osteoarthritis. Tr. 184. Records dating from February to October 2001 from the Madden Medical Clinic in Carthage, Mississippi, indicate that the Plaintiff was treated for pain and swelling in his <u>left</u> knee. Tr. 199- 213. During this time, the doctors aspirated fluid from his left knee and injected it with Hyalgan on several occasions. Id. Despite initial pain improvement from these treatments, the last medical record on this issue, dated October 30, 2001, indicates that he experienced left knee pain despite taking Celebrex. Tr. 199. On that occasion, the doctor injected his knee with the corticosterioid and anti-inflammatory medication Celestone. Id. A consultative examiner confirmed on June 27, 2003, that the Plaintiff suffers from degenerative arthritis in his left knee. Tr. 242. The same examiner noted that both of the Plaintiff's knees flex to 135 degrees, that he can "heel and toe walk slowly," and that he can "squat fully and recover with minimal assistance." Tr. 240. The examiner noted, however, that the Plaintiff "has had to ambulate with a cane or a crutch at times." Tr. 239. At his hearing in November 2004, at which the Plaintiff appeared without the benefit of counsel, the Plaintiff testified that he had been

diagnosed with bone spurs and arthritis of his right knee. Tr. 272. Other than the passing reference to his right knee problems in the cardiac history of August 2002, there are no medical records in the transcript that address the diagnosis of right knee arthritis and bone spurs. The latest medical records in the transcript date from August 2003, some fifteen months before the November 2004 hearing before the ALJ. Tr. 243-250. The August 2003 medical records reflect that he was examined at the Montgomery VA Medical Center on August 21, 2003. Tr. 244. This examination was considered an initial visit. Id. While the records show that the examiner inquired about a variety of health issues, including his weight and cholesterol, and bloodwork was completed, there is no record indicating that the examiner questioned the Plaintiff about knee issues or evaluated his ability to walk.

The record indicates that the Plaintiff attempted to return to work part-time as a security guard from February to July 2003, but he was ultimately fired because of "unsatisfactory performance" related to his memory impairments. Tr. 111-112; 117. He also attempted to work again as a security guard from March to May 2004, but this work attempt was unsuccessful. Tr. 29; 134. The ALJ concluded that Beamon's security guard jobs were "unsuccessful work attempt[s]" and did not constitute substantial gainful activity. Tr. 29. The ALJ also held that Beamon has not performed any substantial gainful work activity since his alleged disability onset date in August 2002. Tr. 32.

## II. STANDARD OF REVIEW

The undersigned recognizes that this Court's review is limited to an inquiry into whether there is substantial evidence to support the Commissioner's findings, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971), and whether the correct legal standards were applied. 42 U.S.C. §

405(g); Falco v. Shalala, 27 F.3d 160, 163 (5th Cir. 1994); Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990). The Fifth Circuit has defined the "substantial evidence" standard as follows:

> [s]ubstantial evidence means more than a scintilla, less than a preponderance, and is:
> > such relevant evidence as a reasonable mind might accept to support a conclusion. It must do more than create a suspicion of the existence of the fact to be established, but "no substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence."

Abshire v. Bowen, 848 F.2d 638, 640 (5th Cir. 1988 )(quoting Hames v. Heckler, 707 F.2d 162, 164 (5th Cir. 1983)(citations omitted)). In applying the substantial evidence standard, the court must carefully examine the entire record but must refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995). Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve. Martinez v. Chater, 64 F.3d 172, 174 (5th Cir. 1995). Hence, if the Commissioner's decision is supported by the evidence, and the proper legal standards were applied, the decision is conclusive and must be upheld by this court. Paul v. Shalala, 29 F.3d 208, 210 (5th Cir. 1994), overruled on other grounds, Sims v. Apfel, 530 U.S. 103, 120 S.Ct. 2080, 147 L. Ed. 2d 80 (2000).

### III. DISCUSSION OF THE ALLEGED ERRORS AND APPLICABLE LAW

The issues on appeal, as found in the Brief in Support of Plaintiff's Motion for Summary Judgment, are quoted, as follows:

I. The ALJ failed to apply the appropriate legal standard at Step 2 of the sequential evaluation of disability, as established in <u>Stone v. Heckler</u>, 752 F.2d 1099 (5th Cir. 1985), in finding Beamon's knee impairments not "severe."

    A. Beamon suffers from bilateral knee impairments.

    B. The ALJ applied an improper regulatory standard of severity.

    C. An ALJ's failure to apply the <u>Stone</u> standard of severity requires remand.

The Court will address each of these issues, in turn.

### A. Beamon suffers from bilateral knee impairments.

The Plaintiff first argues that the ALJ breached his heightened duty to Beamon, who was unrepresented by counsel, by failing to obtain or direct Beamon to obtain known medical documentation of his right knee impairment. The government argues that the Plaintiff's brief makes no showing as to how the ALJ failed on this issue. The undersigned has considered these arguments and agrees with the Plaintiff. According to <u>Ripley v. Chater</u>,

> The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits. If the ALJ does not satisfy his duty, his decision is not substantially justified. Reversal of his decision, however, is appropriate only if the applicant shows that he was prejudiced.

<u>Ripley v. Chater</u>, 67 F.3d 552, 557 (5th Cir. 1995). Prejudice may be established by showing that "additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." <u>Id.</u> at n. 22 (citing <u>Kane v. Heckler</u>, 731 F.2d 1216, 1220 (5th Cir. 1984)).

The Plaintiff met his burden of showing prejudice and demonstrated that the ALJ failed in his basic obligation to develop a full and fair record. The Plaintiff's history of arthritis pain and related problems with his <u>left</u> knee is in the record, and a report briefly references arthritis pain

and problems associated with the Plaintiff's <u>right</u> knee. Tr. 185. The record, however, is totally devoid of medical evidence regarding the diagnosis of the Plaintiff's bone spurs and arthritis in his right knee. The only evidence on this issue is the Plaintiff's testimony at the hearing. Although the Plaintiff is obviously familiar with his own condition, he is not a trained medical professional able to evaluate the records in this instance. The records related to that diagnosis are essential to developing a full and complete record. The ALJ failed in this respect.

The ALJ also failed to develop the record with regard to the Plaintiff's testimony that he suffers from an enlarged heart. Although the Plaintiff did not specifically raise this argument in his brief, the government addressed this issue its Memorandum . <u>See</u> Memorandum at pg. 11. During the Plaintiff's testimony at the November 2004 hearing, he related that he had recently been diagnosed with an enlarged heart. Tr. 271. In the ALJ's decision, he discounted the Plaintiff's testimony regarding his enlarged heart, stating that the cardiac evaluation in August 2002 indicated that the Plaintiff was able to withstand surgery, thus this condition did not impose any significant physical limitations. Tr. 30. Considering the Plaintiff's advanced age and the passage of time from the August 2002 evaluation to the November 2004 hearing, the Plaintiff was prejudiced by the ALJ's failure to obtain medical records regarding this medical condition. Had the ALJ upheld his duty to develop a full and complete record, this additional evidence might have led to a different decision. Accordingly, remand is also proper on this basis.

### B. The ALJ applied an improper regulatory standard of severity.

The Plaintiff argues that the ALJ erred when he ruled that the Plaintiff's knee impairments are "not severe" and affected his work ability "only mildly." Tr. 29. More specifically, the

Plaintiff argues that the ALJ employed an incorrect legal standard to evaluate the Plaintiff's knee impairments. The government counters that the Plaintiff failed to establish a severe impairment of the knees, and, to the contrary, that the ALJ considered the Plaintiff's knee condition when he formulated the residual functional capacity by finding that the Plaintiff's knee condition improved with medication. The government also points out that the Plaintiff managed to work in 2001 while coping with arthritis of the knee.

The Plaintiff counters that the government concedes that the ALJ used the wrong standard when it argued in its brief that "a finding that an impairment causes no more than a mild impact on an individual's ability to work is fully consistent with this Circuit's standard for severity." Government's Memorandum at 8; (document number 11). Examining the language at issue in the ALJ's opinion, the ALJ stated that the Plaintiff's knee condition "is assessed as not severe, affecting his work ability only mildly." Tr. 29. According to the standard set forth by the Fifth Circuit, an impairment can be considered not severe "only if it is a slight abnormality having such minimal effect on an individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." Loza v. Apfel, 219 F.3d 378, 392 (5th Cir. 2000). By the plain language the Fifth Circuit employed in Loza, a condition that affects work ability "only mildly" is not equivalent to an impairment that "would not be expected to interfere with the individual's ability to work." Although this was only one component of the ALJ's evaluation, he employed the wrong legal standard on this issue. Accordingly, the ALJ's decision should be remanded for evaluation of this issue consistent with Fifth Circuit precedent as set forth in Stone v. Heckler, 752 F.2d 1099 (5th Cir. 1985), and Loza.

## C. An ALJ's failure to apply the Stone standard of severity requires remand.

Finally, the plaintiff argues that the decision is contrary to the decision of Stone v. Heckler, 752 F.2d 1099 (5th Cir. 1985), because the ALJ failed specifically to employ and reference the Stone standard in his opinion. Under the standard set forth in Stone and in the regulations, an impairment can be considered not severe only if it is a slight abnormality having such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. Id. at 1103. Stone states that unless the correct standard for the severity requirement is used, as evidenced by a reference to Stone or to the use of the Fifth Circuit's construction of § 404.1520(c), the claim must be remanded to the Secretary for reconsideration. Id. at 1106. Recent Fifth Circuit and sister District Court cases have demonstrated that despite intervening decisions[1], the Stone standard for analysis remains firmly in place. See Loza, 219 F.3d at 391-392 (compiling cases); Naquin v. Astrue, 2008 WL 474206, *2 (M.D. La. Feb. 14, 2008); Evans v. Commissioner, 2003 WL 183111, *4 (E.D. Tex. Jan. 17, 2003). "The burden lies on the ALJ to establish that the correct standard was applied." Naquin, 2008 WL 474206 at *2.

Turning to the ALJ's opinion, it is unclear whether the ALJ followed the dictates of Stone. He neither referenced Stone nor the Fifth Circuit's construction of § 404.1520(c) in his opinion. Moreover, as discussed above, it appears that the ALJ employed the wrong standard to evaluate the severity of the Plaintiff's knee conditions. Accordingly, a remand for evaluation under this standard is necessary.

---

[1] See, e.g., Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

## IV. CONCLUSION

Because the Commissioner's decision was not based upon substantial evidence and incorrect legal standards were employed, the undersigned recommends that this case be remanded to the Commissioner for evaluation consistent with this Report and Recommendation. Accordingly, the undersigned recommends that the Plaintiff's Motion for Summary Judgment be granted and that the Defendant's Motion to Affirm the Decision be denied.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. §636; Fed. R. Civ. P. 72(b)(as amended, effective December 1, 2009); Douglass v. United Services Automobile Association, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted, this the __1st____ day of December, 2009.

_____s/ James C. Sumner_____
UNITED STATES MAGISTRATE JUDGE